UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**DAVID S. NAYLOR,**

    **Petitioner,**

v.                                     Case No.: 8:22-cv-2218-CEH-SPF
                                      Case No.: 8:20-cr-274-CEH-SPF

**UNITED STATES OF AMERICA,**

    **Respondent.**
_____/

**ORDER**

David S. Naylor moves under 28 U.S.C. § 2255 to vacate his sentence for theft of public money. After pleading guilty, he served a 27-month term of imprisonment and is currently serving a three-year term of supervised release.[1] He claims counsel rendered constitutionally ineffective assistance. He is entitled to no relief.

**I.   Background**

Naylor misrepresented his physical limitations to "deceive and steal" from the Department of Veterans Affairs ("VA"). (Crim. Doc. 4 at 21)   He received

---

[1] Publicly-available records from the U.S. Bureau of Prisons ("BOP") show that Naylor was released from BOP custody on April 3, 2023. The Court nevertheless retains jurisdiction over this § 2255 motion because Naylor is currently serving a three-year term of supervised release and has not satisfied the Court's restitution order. (Crim. Docs. 90 and 93); *see Spencer v. Kemna*, 523 U.S. 1, 7–8 (1998) (explaining that a habeas petition is not moot if "collateral consequences" of an expired sentence remain); *McDaniel v. United States*, 491 F. App'x 107 n.1 (11th Cir. 2012) (citing *Dawson v. Scott*, 50 F.3d 884, 885–86 & n.2 (11th Cir. 1995)); *Clecker v. United States*, 410 F. App'x 279, 283 (11th Cir. 2011) ("This Court has noted that a former prisoner's challenge to his sentence is not moot while he is on supervised release.").

$549,426.23 in VA benefits and $181,135.50 in Social Security Disability Insurance Benefits to which he was not entitled. (*Id*. at 23)

Naylor was charged with theft of public money in violation of 18 U.S.C. § 641(a)(1) and (2). (Crim. Doc. 1) He pleaded guilty to the charge under a plea agreement. (Crim. Doc. 4)

The presentence report calculated an advisory guidelines range of 24 to 30 months based on Naylor's total offense level of 17 and his criminal history category of I. (Crim. Doc. 50 at ¶ 127). The Court imposed a sentence of 27 months of imprisonment followed by three years of supervised release. (Crim. Doc. 58) Naylor was ordered to pay restitution in the amount of $549,426.23 to the VA and $181,135.50 to the Social Security Administration. (*Id*.)

Naylor appealed, and the circuit court dismissed the appeal based on the appeal waiver in his plea agreement. *United States v. Naylor*, No. 21-13000, 2022 WL 3335589, at *1 (11th Cir. Aug. 12, 2022).

## II.   Discussion

Naylor moves to vacate his sentence and claims that counsel was ineffective (1) for wrongly advising him to file new applications for disability benefits, which caused him to commit additional crimes and prejudiced him at sentencing (Ground One),[2] and (2) for not presenting medical records to substantiate his disabilities. The United

---

[2] Naylor continues his argument in support of Ground One in the space provided for Ground Two on Form AO-243, Motion Under 28 U.S.C. § 2244 To Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Civ. Doc. 1 at 4–5) He does not allege a separate claim for relief in the space provided for Ground Two. (*Id*.)

States responds that the claims lack merit. (Civ. Doc. 5) Naylor was advised that he could reply to the United States' response within thirty days. (Civ. Doc. 2 at 2) To date, Naylor has not replied.

## Ineffective Assistance of Counsel Standard

The Sixth Amendment right to counsel is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Because a lawyer is presumed to be competent to assist a defendant, the burden is on the petitioner to demonstrate that he was denied the effective assistance of counsel. *United States v. Cronic*, 466 U.S. 648, 658 (1984).

To prevail on a claim of ineffective assistance of counsel, the petitioner must show that (1) counsel's representation fell below an objective standard of reasonable professional assistance; and (2) the petitioner was prejudiced by that deficient performance. *Strickland*, 466 U.S. at 693-94. To establish deficient performance, a petitioner must show that "no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (*en banc*). When evaluating performance, the district court must apply a strong presumption that counsel has "rendered adequate assistance and [has] made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. A petitioner demonstrates prejudice only when he establishes "a

3

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  Courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 2004).

### A.  Ground One

Naylor claims that counsel wrongly advised him to file new applications for disability benefits, which caused him to commit additional crimes and prejudiced him at sentencing. (Civ. Doc. 1 at 4–5)  In support of this claim, he submits a copy of an email in which he asked counsel's paralegal, on October 13, 2020, if "[he] [is] going to be able to receive at least a portion of the disability compensation from the VA and or Social Security." (Civ. Doc. 1 at 13)  Counsel's paralegal responded the next day, "I don't see anything in the [plea agreement] that precludes you from asking for a new rating from the VA, and to seek a new benefit determination from the SSA based on your current health issues[.]" (*Id.*)  Naylor argues that he "was instructed by counsel to seek rates and claims over a year before sentencing and after [his] guilty plea." (*Id.* at 4)  He argues he was prejudiced at sentencing because "the Government apprised the Court that [he] had committed the same exact crime again while out on bail awaiting sentencing." (*Id.* at 5)

In his responsive affidavit, counsel denies any recollection of the email correspondence between Naylor and his paralegal but accepts responsibility for his paralegal's communication to Naylor. (Civ. Doc. 5-3 at 2)  Counsel emphasizes that Naylor filed his new application for disability benefits in July 2020, approximately

4

three months before the email correspondence between Naylor and the paralegal occurred in October 2020. (*Id.*)

In a sentencing memorandum, the United States objected to the presentence report's recommendation of a two-level acceptance-of-responsibility downward adjustment under U.S. Sentencing Guidelines § 3E1.1(a). (Crim. Doc. 50 at ¶ 48; Crim. Doc. 52)  The United States argued that Naylor's pursuit of disability benefits after pleading guilty wasted valuable government resources and demonstrated his failure to accept responsibility for his actions (*id.* at 2):

> During the course of the Pre-Sentence Investigation (PSI), the United States learned that Naylor had submitted a new application for SSA disability benefits on or about July 2, 2020. The new application repeated the same conditions and limitations, as well as the same 2009 onset date, as the prior application that had been terminated as a result of relevant conduct. Naylor did not withdraw his application for disability benefits after his September 22, 2020 guilty plea and instead continued to pursue the claim. Specifically, on November 9, 2020, and November 10, 2020, Naylor attended two appointments for Consultative Examinations related to his disability application. These appointments were with private physicians and paid for by SSA.

The United States argued that Naylor's responses to inquiries from the U.S. Probation Office during the presentence investigation further demonstrated his failure to accept responsibility.  When Naylor and his wife were interviewed by the U.S. Probation Office, Naylor's wife stated that her husband had not lied about his symptoms, and Naylor concurred with her statement. (Crim. Doc. 53 at 3; Crim. Doc. 50 at ¶¶ 38–39)  And, during a mental health evaluation in October 2020, Naylor reported that he suffered a second stroke in July 2019 for which he had been

hospitalized for a week. (Crim. Doc. 52 at 3) However, records provided by Naylor's counsel showed that he was admitted for only two days and the diagnoses from that admission did not include a stroke. (*Id*.)

Finally, the United States argued in its sentencing memorandum that it was not obliged under the plea agreement to recommend a downward adjustment for acceptance of responsibility. (*Id*. at 6) The plea agreement required the United States to make such recommendation unless "adverse information is received suggesting such a recommendation to be unwarranted." (*Id*.; Crim. Doc. 4 at 4–5) The United States argued that both Naylor's failure to withdraw his new application for disability benefits after pleading guilty and his statements during the presentence investigation constitute such adverse information. (Crim. Doc. 52 at 6)

At sentencing, counsel "concede[d] that there is no actual diagnosis of a stroke in the medical records," but emphasized that it was "[Naylor's] good-faith belief, based on a previous experience, that he suffered a stroke in 2019" because he was "being treated for years for symptoms of a stroke." (Crim. Doc. 74 at 9–10) Regarding Naylor's continued pursuit of disability benefits after pleading guilty, counsel argued that Naylor "honestly believed that he was ill and could not work." (*Id*. at 12) Furthermore, counsel suggested that Naylor was unable to withdraw his application for disability benefits because Naylor experienced periods of homelessness without access to telephone, email, or electronic communication. (*Id*.) Finally, counsel argued that it was "inappropriate" to punish Naylor for his wife's statements to the U.S. Probation Office. (*Id*. at 14)

6

The Court overruled the United States' objection to the two-level acceptance-of-responsibility downward adjustment under § 3E1.1(a) (*id.* at 15):

> Mr. Naylor is entitled to at least the two point because he has truthfully admitted the conduct comprising the offense of conviction. He entered a plea of guilty . . . to an information. That means the Government didn't have to assemble a grand jury and present this case to a grand jury, and they didn't have to present the case to a jury for a trial. So he eliminated their need to establish their burden of proof at trial because he did not deny the essential factual elements of guilt.
>
> So in that sense, he has admitted his guilt. I do believe that there's some confusion with regard to his additional application, which he did not withdraw after he had already entered a guilty plea. Perhaps, that is because, as [defense counsel] indicates, there are many times when he actually didn't have anything, was homeless, and he couldn't even get in touch with him and had to send an investigator out to find him.

However, the Court sustained the United States' objection to an additional one-level downward adjustment under § 3E1.1(b) because the United States had not moved for that additional level. (*Id.* at 17)

The record refutes Naylor's claim that he followed counsel's paralegal's advice to file new applications for disability benefits which caused him to commit additional crimes. The record shows Naylor submitted new applications for disability benefits in July 2020, approximately three months *before* counsel's paralegal advised him in October 2020 that his plea agreement did not preclude him from doing so. Because Naylor was already wrongfully pursuing additional disability benefits, he cannot show that the advice from counsel's paralegal caused his conduct. *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (concluding that a petitioner is

7

entitled to no relief if the allegations are "patently frivolous, based upon unsupported generalizations, or affirmatively contradicted by the record.") (quotations omitted).

Additionally, the record shows that Naylor was not prejudiced by, but rather benefited from, counsel's successful advocacy for a two-level downward adjustment for acceptance of responsibility under § 3E1.1(a). At sentencing, counsel explained that Naylor continued to pursue disability benefits after pleading guilty because he "honestly believed that he was ill and could not work." (Crim. Doc. 74 at 12) Counsel repeatedly emphasized that, although there was no diagnosis of a stroke in the available medical records, "the medical records all show treatment for a stroke and medical billing codes that are consistent with that of a person who suffered a stroke." (*Id*. at 11) And, counsel pointed to the fact that the United States "cannot produce anything to the Court that says he unequivocally did not have a stroke." (*Id*.)

The Court agreed that Naylor was entitled to a two-level acceptance-of-responsibility downward adjustment under § 3E1.1(a) and overruled the United States' objection. (Crim. Doc. 74 at 15) Naylor cannot show that counsel's performance was deficient or prejudicial because counsel successfully advocated for the two-level downward adjustment. *See Winthrop-Redin*, 767 F.3d at 1216.

Moreover, Naylor cannot show that counsel's performance was deficient or prejudicial regarding the additional one-level downward adjustment under § 3E1.1(b) that he did not receive. Under the plea agreement, Naylor agreed that "the determination as to whether [he] qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the

8

Middle District of Florida[.]" (Crim. Doc. 4 at 5) At sentencing, the Court explained that it was not permitted to grant the additional one-level under § 3E1.1(b) because the United States did not move for that additional downward adjustment:

> If the Government doesn't move for it, then the Court is not permitted to include in the presentence investigation report that one level. And that's, again, set forth in the comments to the section 3E1.1. And, specifically, I'm looking at note No. 6, "because the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial, an adjustment under subsection B may only be granted upon a formal motion by the Government at the time of sentencing."

The Court could not grant Naylor an additional one-level under § 3E1.1(b), and Naylor does not suggest what more counsel could have argued to support the additional one-level. Naylor's undeveloped claim "that a different strategy would have been better does not meet his burden under *Strickland*." *Lukehart v. Sec'y, Fla. Dep't of Corr.*, 50 F.4th 32, 47 (11th Cir. 2022) (citing *Ward v. Hall*, 592 F.3d 1144, 1164 (11th Cir. 2010) ("[C]ounsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy.")).

   **B.   Ground Three**

Naylor claims counsel was ineffective for not presenting medical records to substantiate his disabilities. (Civ. Doc. 1 at 7) According to Naylor, counsel neglected to present the "thousands of pages of medical records [that] support[] his condition." (*Id.*) He claims that, while serving his sentence, the Bureau of Prisons treated him for

9

these medical issues. (*Id*.) He neglects to describe his medical issues or the treatment he received while incarcerated.

In his responsive affidavit, counsel avers that all existing medical records were provided to the U.S. Probation Office. (Civ. Doc. 5-3 at 3) And, the district court made findings of fact about Naylor's physical and mental health conditions based on the information Naylor provided to the U.S. Probation Office during his presentence investigation interview. (*Id*.)

Naylor cannot show counsel's performance was deficient. The record shows that counsel both requested medical records from Naylor's providers and submitted all available records to the U.S. Probation Office. The presentence report summarizes the records from Naylor's treatment at the VA, at Bayfront Health, at Optum Healthcare, and other locations. (Crim. Doc. 50 at ¶¶ 92–100; "Records provided by the defense attorney from provider Monica Malone reflect that the defendant was seen on multiple occasions from August 2, 2019, through July 29, 2020, however, the [medical] problem was not documented.") At sentencing, counsel reported that he had subpoenaed a neurologist to substantiate Naylor's condition. (Crim. Doc. 74 at 9) And, counsel emphasized that the "reams of medical records" showed Naylor was "treated for years for symptoms of a stroke." (*Id*. at 10 and 22) Naylor neglects to identify the medical providers or records that counsel should have discovered, and his contention that undiscovered medical records could substantiate his disabilities is pure speculation. *See Brownlee v. Haley*, 306 F. 3d 1053, 1060 (11th Cir. 2002)

10

("[S]peculation is insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation.") (citations omitted).

Nor can Naylor show he was prejudiced by counsel's performance. To demonstrate prejudice, he must show "a reasonable probability that the result of the proceeding—i.e., the length of his sentence—would have been different absent counsel's allegedly deficient performance." *United States v. Simmons*, 799 F. App'x 718, 722 (11th Cir. 2020) (citing *Griffith v. United States*, 871 F.3d 1321, 1330 (11th Cir. 2017)). Naylor cannot meet this burden because, as explained *supra*, counsel successfully advocated for a two-level downward adjustment for acceptance-of-responsibility, and the Court was not permitted to grant him a third level. Even if counsel had discovered medical records to substantiate Naylor's disabilities, the Court could not have granted Naylor an additional one-level downward adjustment unless the United States moved for such adjustment.

### III. Conclusion

Naylor's motion under 28 U.S.C. § 2255 (Civ. Doc. 1) is **DENIED**. The Clerk is directed to enter judgment against Naylor, terminate any pending motions, close this case, and enter a copy of this order in the criminal action.

Naylor is not entitled to a certificate of appealability. To obtain a certificate of appealability, the petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v.*

*Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because Naylor fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, he is not entitled to a certificate of appealability or to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, this 4th day of March, 2025.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Pro Se Petitioner
Counsel of Record

12